**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| JOSEPH LABADIE, on behalf of himself and all others similarly situated, | Civil Action No.: |
| Plaintiff, | |
| vs. | **CLASS ACTION COMPLAINT** |
| COMMUNITY CHOICE CREDIT UNION, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff, Joseph Labadie, on behalf himself and all others similarly situated, by counsel, alleges:

**NATURE OF THE ACTION**

1. This is a civil action seeking monetary damages, restitution and declaratory relief from Defendant, Community Choice Credit Union ("CCCU"), arising from the assessment and collection of a) "Overdraft Fees" ("OD Fees") on accounts that were never actually overdrawn; and b) more than one insufficient funds fees ("NSF Fees") on the same item.

2. These practices breach promises made in the CCCU's adhesion contracts—specifically, the promise to charge OD Fees only on transactions which actually overdraw an account and the promise to charge only one NSF Fee per item. The wrongful taking of funds from accounts also constitutes conversion.

3. The charging for such overdraft fees also violates federal law. Because Defendant failed to describe its actual overdraft service in its overdraft opt-in form by, *inter alia*, failing to describe accurately the actual method by which Defendant calculates its overdraft fees, and because, alternatively, Defendant also violated or did not fulfill other prerequisites of

Regulation E (12 C.F.R. §§1005.17 *et seq*.) of the Electronic Fund Transfer Act (15 U.S.C.A. §§ 1693 *et seq*.) before being allowed to charge overdraft fees, it prohibited Defendant from assessing overdraft fees for automated teller machine (ATM) and non-recurring debit card transactions (12 C.F.R. §1005.17(b)(1)(i)), but Defendant did so anyway.

4.      Plaintiff and other CCCU customers have been injured by CCCU's practices.  On behalf of himself and the putative class, Plaintiff seeks damages, restitution and injunctive relief for CCCU's wrongful conduct.

## PARTIES

5.      Plaintiff Joseph Labadie is a citizen and resident of Fenton, Michigan.

6.      Defendant CCCU Credit Union is a credit union headquartered in Farmington Hills, Michigan. It has over $1 billion in assets, over 105,000 members, and 21 branches across Michigan.

## JURISDICTION

7.      This Court has original jurisdiction over this putative class action lawsuit pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § § 1332(d)(2) & (6), because the aggregate sum of the claims of the members of each of the putative classes exceeds $5 million, exclusive of interest and costs, because Plaintiff brings this action on behalf of proposed classes that are each comprised of over one hundred members, and because at least one of the members of each of the proposed classes is a citizen of a different state than Defendant. Further, this Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

8.      Venue and jurisdiction are proper in this district because CCCU is headquartered in a county encompassed by this District.

## BACKGROUND FACTS

2

## I.   CCCU CHARGES OD FEES ON TRANSACTIONS THAT DO NOT ACTUALLY OVERDRAW THE ACCOUNT

9.     In connection with its processing of debit transactions (debit card, ATM, check, ACH, and other similar transactions), CCCU assesses overdraft fees and NSF fees to customer accounts when it claims to have determined that a customer's account has been overdrawn.

10.     Overdraft fees and NSF fees constitute the primary fee generators for banks and credit unions.  In 2009 alone, banks generated an estimated $37 billion from overdraft fees on debit purchases and ATM transactions.  While credit unions portray themselves to customers as more overdraft and fee friendly than banks, a 2015 study conducted by Moebs Services confirmed that the median overdraft fees charged by credit unions are not statistically significantly less than the median overdraft fees charged by banks.  For credit unions such as CCCU, overdraft fees and NSF fees are a major source of revenue and a profit center.  According to a 2010 report by Georgetown University Law Professor Adam Levitin, overdraft fees comprise 6% to 7% of the gross revenue of credit unions.  (Filene Research Institute Report, Overdraft Regulation A Silver Lining In The Clouds?  Filene Research Institute 2010).

11.     The high cost of an overdraft fee is usually unfairly punitive.  In a 2012 study, more than 90% of customers who were assessed overdraft fees overdrew their account by mistake.  (May 2012 Pew Charitable Trust report entitled "Overdraft America:  Confusion and Concerns about Bank Practices", at p. 4).   More than 60% of the transactions that resulted in a large overdraft fee were for less than $50.  (June 2014 Pew Charitable Trust report entitled "Overdrawn", at p. 8).  More than 50% of those who were assessed overdraft fees do not recall opting into an overdraft program (*id*. at p. 5), and more than two-thirds of customers would have

preferred the financial institution decline their transaction rather than paying the transaction into overdraft and charging a very large fee (*id*. at p. 10).

12.     Unfortunately, the customers who are assessed these fees are the most vulnerable customers.  Younger, lower-income, and non-white account holders are among those who were more likely to be assessed overdraft fees.  (*Id*. at p. 1).  A 25-year-old is 133% more likely to pay an overdraft penalty fee than a 65-year-old.  (*Id*. at p. 3).  More than 50% of the customers assessed overdraft fees earned under $40,000 per year.  (*Id*. at p. 4).  Non-whites are 83% more likely to pay an overdraft fee than whites.  (*Id*. at p. 3).

13.     As a result of banks and credit unions taking advantage of millions of customers through the unfair practice of charging overdraft fees through methodologies that maximize the possible number of expensive overdraft fees to be charged, there has been a substantial amount of litigation over the past few years. The outcome of these cases has predominantly fallen in favor of plaintiffs with the banks and credit unions repaying their customers over one billion dollars for the unlawfully assessed overdraft fees by way of jury verdicts and settlements.[1]

14.     The federal government has also stepped in to provide additional protections to customers with respect to abusive overdraft policies.  In 2010, the Federal Reserve Board enacted regulations giving financial institutions the authority to charge overdraft fees on ATM and one-time debit card transactions only if the institution first obtained the affirmative consent of the customer to do so. (12 C.F.R. § 1005.17 (Regulation E's "Opt-In Rule")).

15.     To qualify as affirmative consent, the opt-in form must include, but is not limited to the following:

---

[1]

http://files.consumerfinance.gov/f/documents/CFPB_Arbitration_Agreements_Notice_of_Proposed_ Rulemaking.pdf, at p. 74-75.

- The customer must be provided the overdraft policy, including the dollar amount of any fees that will be charged for an overdraft, and the maximum number of fees that can be assessed on any given day (if there is no maximum, that fact must be stated);
- The financial institution must state whether alternatives, such as linking the checking account to a secondary account or line of credit, are available.
- The opt-in consent must be obtained separately from other consents and acknowledgements;
- The consent cannot serve any purpose other than opting into the overdraft program;
- The consent cannot be a pre-selected checked box;
- The financial institution may not provide different terms for the account depending on whether the customer opted in to the overdraft program.

If the financial institution does not obtain proper, affirmative consent from the customer that meets all of the requirements of Regulation E's Opt-in Rule, including fulfilling each of the above requirements, then it is not permitted to charge overdraft fees on ATM and one-time debit card transactions.  On information and belief, CCCU did not fulfill these prerequisites.

16.     Further, at all relevant times, CCCU has had an overdraft program in place for assessing overdraft fees which, *inter alia*, is: (1) contrary to the express and implied terms of its contract with members; (2) contrary to CCCU's representations about its overdraft program to its members; and (3) contrary to its members' expectations regarding the assessment of overdraft fees.

17.     There are three balances in an account: the "balance;" the "collected available balance;" and, the "artificial available balance."  The "balance" (sometimes called the "actual

5

balance" or "ledger balance") is the money in the account, without deductions for holds on pending transactions or on deposits.  It is the official balance of the account.  It is the balance provided to the customer in monthly statements, which is the official record of activity in the account.  It is the balance used to determine interest on deposits and any minimum balance requirements.  Further, based on information and belief, it is the balance which is used by Defendant CCCU to report its deposits to regulators and the public.

18.     The "collected available balance" is the "balance" less holds placed on certain deposits pursuant to the financial institution's "Funds Availability Policy" ("FAP").  Regulation CC (12 CFR part 229) establishes maximum permissible hold periods for checks and other deposits and all financial institutions are required by it to have an FAP.

19.     The "artificial available balance" is a completely different calculation than the "collected available balance." Although the "artificial available balance" has the words "available balance" in it like the "collected available balance" does,  the "artificial available balance" is an accounting gimmick which  takes the "collected available balance" and then further deducts from it pending debit card transactions which have not yet posted (and which might or might not ever post), meaning the money is still in the account of the credit union member.

20.     By using the artificial available balance to calculate overdraft fees—as opposed to the actual money in an accountholder's account—to determine whether to assess an OD Fee, CCCU increases the number of OD Fees it assesses on its accountholders.

21.     In plain, clear, and simple language, the checking account contract documents issued by CCCU discussing OD Fees promise that the CCCU will only charge OD Fees on transactions with insufficient funds to cover a given transaction. Defendant is responsible for

drafting all its contractual documents and has those documents, and the account information of

Plaintiff and all class members, in its possession.

22.     The "Membership Agreement and Disclosures" ("Deposit Agreement"), Ex. A,

states:

> If, on any day, the available funds in your share or deposit account are not sufficient to
> pay the full amount of a check, draft, transaction, or other item, plus any applicable fee,
> that is posted to your account, we may return the item or pay it, as described below."

Ex. A.

23.     Nowhere in the Account Documents is "available funds" defined.

24.     CCCU's Opt-In Form, Ex. B, also deceptively and incompletely states the credit

union's true policy.  With the Fee Schedule, Ex. C, the Deposit Agreement and the Overdraft

Disclosure are referred to collectively herein as the "Account Documents."

25.     The Opt-In Form states:

> An overdraft occurs when you do not have enough money in your account to cover a
> transaction, but we pay it anyway.

Ex. B.

26.     However, on numerous occasions, including but not limited to transactions that

posted on February 3, 2020 and February 4, 2020, Plaintiff was assessed OD Fees and NSF Fees

in the amount of $30 each—despite the fact that, according to the bank statements issued by

CCCU, his account contained sufficient funds to cover the transactions for which he was

assessed OD Fees.  In sum, contrary to the account agreement, the OD Fees and NSF Fees were

charged even though the account balance was not negative.

## II.     CCCU CHARGES TWO OR MORE FEES ON THE SAME ITEM

27.     As alleged more fully herein, CCCU's Account Documents allow it to take certain steps when its accountholders attempt a transaction but do not have sufficient funds to cover it. Specifically, CCCU may (a) authorize the transaction and charge a *single* OD Fee; or (b) reject the transaction and charge a *single* NSF Fee.

28.     In contrast to its Account Documents, however, CCCU regularly assesses two or more NSF Fees on the *same* item or transaction.

29.     This abusive practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one NSF Fee on the same item when it is reprocessed. Instead, Chase charges one NSF Fee even if a transaction is resubmitted for payment multiple times.

30.     CCCU's Account Documents never disclose this practice. To the contrary, CCCU's Account Documents indicate it will only charge a single NSF Fee on an item or per transaction.

**A.  Plaintiff's Experience**

31.     In support of his claims, Plaintiff offers an example of NSF Fees that should not have been assessed against him checking account. As alleged below, CCCU: (a) reprocessed a previously declined item; and (b) charged a fee upon reprocessing.

32.     On February 5, 2020 Plaintiff attempted a single payment from him account.

33.     CCCU rejected payment of that item due to insufficient funds in Plaintiff's account and charged him a $30 NSF Fee for doing so. Plaintiff does not dispute the initial fee, as it is allowed by CCCU's Account Documents.

34.     Then, five days later, on February 10, 2020, CCCU again rejected the payment, and charged a *second* $30 NSF Fee.

35.     *In sum, CCCU charged Plaintiff $60 in fees to attempt to process a single item.*

36.     Plaintiff understood the payment to be a single transaction as is laid out in CCCU's Account Documents, capable at most of receiving a single NSF Fee (if CCCU returned it) or a single OD Fee (if CCCU paid it).

37.     The same fact pattern occurred, as another example, on February 3 and February 6, 2020.

**B.  The Imposition of Multiple Fees on a Single Transaction Violates CCCU's Express Promises and Representations**

38.     The Account Documents provide the general terms of Plaintiff's relationship with CCCU and therein CCCU makes explicit promises and representations regarding how transactions will be processed, as well as when NSF Fees and OD Fees may be assessed.

39.     The Account Documents contain explicit terms indicating that fees will only be assessed once per transaction or single item—defined as a customer request for payment or transfer—when in fact CCCU regularly charges two or more fees per transaction or single item even though a customer only requested the payment or transfer once.

40.     CCCU's Account Documents indicate that a singular NSF Fee can be assessed on checks, ACH debits, and electronic payments.

41.     CCCU's Account Documents state that it will charge a single fee per item or transaction that is returned due to insufficient funds.  According to the Fee Schedule:

| NSF/ODP/Stop Payment Fees | | |
|---|---|---|
| Non-Sufficient Funds — NSF (ea.)*** | $30.00 | $30.00 |
| Overdraft Privilege (ACH, check, debit) (ea.) | $30.00 | $30.00 |
| Returned Item — 1st Party — our member writes a check and check is returned | $30.00 | $30.00 |
| Returned Item — 3rd Party — our member deposits check written by another party and check is returned | $15.00 | $15.00 |

Ex. C.

42.     The same "item" cannot conceivably become a new one each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to "write" a new item.

43.     There is zero indication anywhere in the Account Documents that the same "item" is eligible to incur multiple NSF Fees.

44.     The same "item" on an account cannot conceivably become a new "item" each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to reprocess it.

45.     There is zero indication anywhere in the Fee Schedule that the same "item" is eligible to incur multiple fees. Similarly, the Deposit Agreement, Ex. A, states:

> If, on any day, the available funds in your share or deposit account are not sufficient to pay the full amount of **a** check, draft, transaction, or other **item**, plus any applicable fee, that is posted to your account, we may return **the item** or pay **it**, as described below. The Credit Union's determination of an insufficient available account balance may be made at any time between presentation and the Credit Union's midnight deadline with only one review of the account required. We do not have to notify you if your account does not have sufficient available funds in order to pay **an item**. Your account may be subject to **a charge** for **each item** regardless of whether we pay or return **the item**.

10

Ex. A (emphasis added).

46.     Even if CCCU reprocesses an instruction for payment, it is still the same item. CCCU's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

47.     The Account Documents described never discuss a circumstance where CCCU may assess multiple NSF Fees for a single item that was returned for insufficient funds and later reprocessed one or more times and returned again.

48.     In sum, CCCU promises that one NSF Fee will be assessed per electronic payment or check, and these terms must mean all iterations of the same instruction for payment. As such, CCCU breached the contract when it charged more than one fee per item.

49.     Reasonable consumers understand any given authorization for payment to be one, singular "item" as that term is used in CCCU's Account Documents.

50.     Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "item," which CCCU will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does CCCU disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor have CCCU customers ever agree to such fees or practices.

51.     Customers reasonably understand, based on the language of the Account Documents and CCCU's other documents, that the Credit Union's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger NSF Fees. In other words, it is always the same item or transaction.

52.    Banks and credit unions, like CCCU, that employ this abusive practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something CCCU never did here.

53. For example, Air Academy Federal Credit Union contracts for its NSF fee as follows:

"$32.00 **per presentment**."

*See,* https://www.aafcu.com/fees.html (emphasis added) [last visited on or about March 17, 2020].

54. Central Pacific Bank contracts unambiguously:

Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds in your account, **may be resubmitted one or more times for payment, and a $32 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds**.

*See,* https://www.cpb.bank/media/1618/fee-001-rev-10-24-2019-misc-fee-schedule.pdf (emphasis added) [last visited on or about March 17, 2020].

55. Community Bank, N.A. unambiguously contracts:

**You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned**.

*See,* https://cbna.com/u/header/2019-Overdraft-and-Unavailable-Funds-Practices-Disclosure-FINAL-1.14.2020.pdf (emphasis added) [last visited on or about March 17, 2020].

56. Delta Community Credit Union contracts unambiguously as follows:

"$30 **per presentment**."

*See,* https://www.deltacommunitycu.com/home/fees.aspx (emphasis added) [last visited on or about March 17, 2020].  Further, in its Account Contract, Delta unambiguously states as follows:

The Credit Union reserves the right to charge you an overdraft/insufficient funds fee if you write a check or initiate an electronic transaction that, if posted, would overdraw your Checking Account.  **Note that you may be charged an NSF fee**

12

**each time a check or ACH is presented to us, even if it was previously submitted and rejected**.

*See,* https://www.deltacommunitycu.com/home/forms/member-savings-services-disclosures-and-agreements.aspx (emphasis added) [last visited on or about March 17, 2020].

57. First Financial Bank contracts unambiguously:

> Merchants or payees may present an item multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment). **Each presentment is considered an item and will be charged accordingly**."

*See,* https://www.bankatfirst.com/content/dam/first-financial-bank/eBanking_Disclosure_of_Charges.pdf (emphasis added) [last visited on or about March 17, 2020].

58. First Hawaiian Bank unambiguously contracts:

> You agree that multiple attempts may be made to submit a returned item for payment and that multiple fees may be charged to you as a result of a returned item and resubmission.

*See,* https://www.fhb.com/en/assets/File/Home_Banking/FHB_Online/Terms_and_Conditions_of_FHB_Online_Services_RXP1.pdf (emphasis added) [last visited on or about March 17, 2020].

59. First Northern Credit Union unambiguously contracts its NSF fee as,

> "$22.00 **per each presentment and any subsequent representment(s)**."

*See*, https://www.fncu.org/feeschedule/?scpage=1&scupdated=1&scorder=-click_count (emphasis added) [last visited on or about March 17, 2020.

Further, in its Account Contract, First Northern unambiguously contracts as follows:

> You further agree that **we may charge a NSF fee each time an item is presented for payment even if the same item is presented for payment multiple times**.  For example, if you wrote a check to a merchant who submitted the payment to us and we returned the item (resulting in a NSF fee), the merchant may re-present the check for payment again.  If the second and any subsequent presentments are returned unpaid, **we may charge a NSF fee for each time we return the item.  You understand this means you could be charged multiple NSF fees for one check** that you wrote as that check could be presented and returned more than once.

13

**Similarly**, if you authorize a merchant (or other individual or entity) to electronically debit your account, such as an ACH debit, **you understand there could be multiple submissions of the electronic debit request which could result in multiple NSF fees.**

*See,*
(https://www.fncu.org/SecureAsset.aspx?Path=/7/Member_Agreement_November_1_2019.pdf (emphasis added) [last visited on or about March 17, 2020].

60. Glendale Federal Credit Union unambiguously contracts its NSF fee as,

"$30 **per presentment**."

*See*, https://glendalefcu.org/pdf/fees.pdf (emphasis added) [last visited on or about March 17, 2020].

61. Klein Bank contracts unambiguously:

[W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. **We will charge an NSF/Overdraft Fee** as provided in this section **regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.**

*See,* https://kleinbankonline.com/bridge/disclosures/ib/disclose.html (emphasis added) [last visited on or about March 17, 2020].

62. Liberty Financial contracts its NSF fee as:

"$27.00 **per presentment**."

*See,* https://liberty.financial/about/fee-schedule/ (emphasis added) [last visited on or about March 17, 2020].

63. Los Angeles Federal Credit Union contracts its NSF fee unambiguously as:

"$29 **per presentment**."

*See*, https://www.lafcu.org/pdf/currentfees_bus.pdf (emphasis added) [last visited on or about March 17, 2020].

64. Members First Credit Union contracts unambiguously:

> We reserve the right to charge an Non-Sufficient Funds Fee (NSF Fee) each time a transaction is presented if your account does not have sufficient funds to cover the transaction at the time of presentment and we decline the transaction for that reason. **This means that a transaction may incur more than one Non-Sufficient Funds Fee (NSF Fee) if it is presented more than once…we reserve the right to charge a Non-Sufficient Funds (NSF Fee) for both the original presentment and the representment** [.]

*See,*
http://www.membersfirstfl.org/files/mfcufl/1/file/Membership_and_Account_Agreement.pdf
(emphasis added) [last visited on  or about March 17, 2020].

65. Meriwest Credit Union lists its fee as:

> "$35.00/item **per presentment**."

*See,*
https://www.meriwest.com/sites/www.meriwest.com/files/media/consumer_feesched.pdf
(emphasis added) [last visited on or about March 17, 2020].

66. Partners 1st Federal Credit Union contracts unambiguously:

> Consequently, because **we may charge a fee for an NSF item each time it is presented, we may charge you more than one fee for any given item**. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*See,* https://www.partners1stcu.org/uploads/page/Consumer_Account_Agreement.pdf
(emphasis added) [last visited on or about March 17, 2020].

67. RBC Bank unambiguously contracts:

> We may also charge against the Account an NSF fee for each item returned or rejected, **including for multiple returns or rejections of the same item**.

*See,* https://www.rbcbank.com/siteassets/Uploads/pdfs/Service-Agreement-for-Personal-Accounts.pdf (emphasis added) [last visited on or about March 17, 2020].

68. Regions Bank contracts unambiguously:

If an item is presented for payment on your account at a time when there is an insufficient balance of available funds in your account to pay the item in full, you agree to pay us our charge for items drawn against insufficient or unavailable funds, whether or not we pay the item. **If any item is presented again after having previously been returned unpaid by us, you agree to pay this charge for each time the item is presented for payment and the balance of available funds in your account is insufficient to pay the item**.

*See,* https://www.regions.com/virtualdocuments/Deposit_Agreement_6_1_2018.pdf (emphasis added) [last visited on or about March 17, 2020].

69. Tyndall Federal Credit Union contracts unambiguously:

$28.00 **per presentment** (maximum 5 per day).

*See,* https://tyndall.org/member_center/document_center/fee_schedule (emphasis added) [last visited on or about March 17, 2020].

70. USE Credit Union contracts unambiguously:

**Fees are charged per presentment, meaning the same item is subject to multiple fees if presented for payment multiple times**.

*See,* https://www.usecu.org/home/Files/static/documents/Schedule_of_Fees.pdf (emphasis added) [last visited on or about March 17, 2020].

## CLASS ACTION ALLEGATIONS

71.   Description of the Classes: Plaintiff brings this class action on behalf of himself and two classes of persons ("the Classes") pursuant to FRCP 23. The Classes are defined as follows:

All accountholders who, during the applicable statute of limitations, were charged OD Fees on transactions that did not overdraw a CCCU checking account (the "OD Fee Class")

All accountholders who, during the applicable statute of limitations, were charged more than one NSF on the same item on a CCCU checking account (the "NSF Fee Class")

All accountholders who, during the applicable statute of limitations, were charged an overdraft fee for ATM or non-recurring debit card transaction(s) (the "Regulation E Class").

72.     Plaintiff reserves the right to modify or amend the definition of the Classes as this litigation proceeds.

99.     Excluded from the Classes are CCCU, its parents, subsidiaries, affiliates, officers and directors, any entity in which CCCU has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

100.    This action is properly maintainable as a class action.

101.    The class consists of thousands of members, such that joinder of all Class members is impracticable.

102.    There are questions of law and fact that are common to the Class members that relate to Defendant's practice of charging: OD Fees on transactions that did not overdraw accounts, multiple NSF fees for one item or transaction, and Defendant's liability for conversion.

103.    The claims of the Plaintiff are typical of the claims of the proposed Class because they are based on the same contract documents and legal theories, and Plaintiff has no interests that are antagonistic to the interests of the Class members.

104.    The Plaintiff is an adequate representative of the Class and has retained competent legal counsel experienced in class actions and complex litigation.

105.    The questions of law and fact common to the Class predominate over any questions affecting only individual Class members, particularly because the focus of the litigation will be on CCCU's conduct and its improper fees. The predominant questions of law and fact in this litigation include, but are not limited to, whether Defendant wrongfully:

- Imposed OD Fees on transactions when those transactions did not overdraw accounts, and/or imposed more than one NSF Fee on the same item.

- Breached its contract with Plaintiff and Class members.

- Breached the covenant of good faith and fair dealing imposed on it.

- Violated MCL 600.2912a.

106.    Other questions of law and fact common to the Class include the proper method or methods by which to measure damages.

107.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the pursuit of hundreds of individual lawsuits would not be economically feasible for individual Class members, and certification as a class action will preserve judicial resources by allowing the common issues of the Class members to be adjudicated in a single forum, avoiding the need for duplicative hearings and discovery in individual actions that are based on an identical set of facts. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendant, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and CCCU's misconduct will proceed without remedy. In addition, without a class action, it is likely that many members of the Class will remain unaware of CCCU's conduct and the claims they may possess.

108.    It appears that other persons who fall within the Class definitions set forth above are not pursuing similar litigation, such that individual Class members do not wish to control the prosecution of separate actions.

109.    This proposed class action does not present any unique management difficulties.

<u>**COUNT I**</u>
<u>**BREACH OF CONTRACT, INCLUDING BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**</u>
**(On Behalf of Plaintiff and the Classes)**

110.   Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth below.

111.   Plaintiff and CCCU have contracted for bank account deposit, checking, ATM, and debit card services.

112.   All contracts entered by Plaintiff and the Class are identical or substantively identical because Defendant's form contracts were drafted by Defendant, were contracts of adhesion not open to negotiation and were used uniformly.

113.   CCCU breached promises included in the account documents as described herein.

114.   Michigan imposes a duty of good faith and fair dealing on contracts between banks and/or credit unions and their customers because banks and credit unions are inherently in a superior position to their checking account holders and, from this superior vantage point, they offer customers contracts of adhesion, often with terms not readily discernible to a layperson.

115.   Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit— not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

116.   CCCU has breached the covenant of good faith and fair dealing in the contract through its policies and practices as alleged herein. Specifically, CCCU exercised its discretion in bad faith by charging OD Fees on transactions that did not overdraw accounts and by charging multiple NSF Fees on the same item.

117.    Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

118.    Plaintiff and members of the Class have sustained damages as a result of CCCU's breach of the contract.

119.    Plaintiff and members of the Class have sustained damages as a result of CCCU's breach of the covenant of good faith and fair dealing.

### COUNT II
### Violation of Electronic Fund Transfers Act (Regulation E)
### C.F.R. § 1005 et seq. (authority derived from 15 U.S.C. § 1693 *et seq*.))
### (On Behalf of Plaintiff and the OD Fee Class and the Regulation E Class)

120.    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

121.    By charging overdraft fees on ATM and nonrecurring transactions, Defendant violated Regulation E (12 C.F.R. §§1005 et seq.), whose "primary objective" is "the protection of consumers" (§1005.l(b)) and which "carries out the purposes of the [Electronic Fund Transfer Act 15 U.S.C. §§1693 et seq.), the "EFTA"] (§1005. l(b)), whose express "primary objective" is also "the provision of individual consumer rights" (15 U.S.C. §1693(b)).

122.    Specifically, the charges violated what is known as the "Opt In Rule" of Regulation E (12 C.F.R. § 1005.17.) The Opt In Rule states: "a financial institution ... shall not assess a fee or charge ... pursuant to the institution's overdraft service, unless the institution: (i) [p]rovides the consumer with a notice in writing [the opt-in notice]. . . describing the institution's overdraft service" and (ii) "[p ]rovides a reasonable opportunity for the consumer to affirmatively consent" to enter into the overdraft program. (Id.) The notice "shall be clear and readily understandable."  (12 C.F.R. §205.4(a)(l).) To comply with the affirmative consent requirement, a financial institution must provide a segregated description of its overdraft

practices that is accurate, non-misleading and truthful and that conforms to 12 C.F.R. § 1005.17 prior to the opt-in, and must provide its customers a reasonable opportunity to opt-in after receiving the description. The affirmative consent must be provided in a way mandated by 12 C.F.R. § 1005.17, and the financial institution must provide confirmation of the opt-in in a manner that conforms to 12 C.F.R. § 1005.17.

123.    The intent and purpose of this Opt-In Form is to "assist customers in understanding how overdraft services provided by their institutions operate .... by explaining the institution's overdraft service ... in a clear and readily understandable way"-as stated in the Official Staff Commentary (74 Fed. Reg. 59033, 59035, 59037, 5940, 5948), which is "the CFPB's official interpretation of its own regulation," "warrants deference from the courts unless 'demonstrably irrational,'" and should therefore be treated as "a definitive interpretation" of Regulation E. *Strubel v. Capital One Bank* (*USA*), 2016 U.S. Dist. LEXIS 41487, *11 (S.D. N.Y. 2016) (quoting *Chase Bank USA v. McCoy*, 562 U.S. 195, 211 (2011)) (so holding for the CFPB's Official Staff Commentary for the Truth In Lending Act's Regulation Z)).

124.    Defendant has failed to comply with the 12 C.F.R. § 1005.17 opt-in requirements, including failing to provide its customers with a valid description of the overdraft program which meets the strictures of 12 C.F.R. § 1005.17. Defendant's opt-in method fails to satisfy 12 C.F.R. § 1005.17 because, *inter alia*, it states that an overdraft occurs when you do "not have enough money in your account to cover a transaction, but we pay it anyway" when in fact Defendant assesses overdraft fees when there is enough money in the account to pay for the transaction at issue.

125.    As a result of violating Regulation E's prohibition against assessing overdraft fees on ATM and non-recurring debit card transactions without obtaining affirmative consent to do so, Defendant has harmed Plaintiff and the Classes.

126.    Due to Defendant's violation of Regulation E (12 C.F.R. § 1005.17), Plaintiff and members of the Class are entitled to actual and statutory damages, as well as attorneys' fees and costs of suit pursuant to 15 U.S.C.A. § 1693m.

## COUNT III
## Conversion under MCL 600.2912a
### (On Behalf of Plaintiff and the Classes)

127.    Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth below.

121.    Plaintiff and members of the class entrusted money to be held by Defendant.

122.    The money Defendant held for Plaintiff and class members were held in identifiable accounts and was still the property of Plaintiff and class members.

123.    These deposits were bailments and the Defendant was a bailee.

124.    Defendant stole, embezzled and/or converted funds belonging to Plaintiff and members of the class and converted Plaintiff's funds to its own use.

125.    Money taken out of the accounts of Plaintiff and members of the class for OD and NSF fees were converted to Defendant's ledgers.

126.    Plaintiff and members of the class no longer had use of the funds taken as OD and NSF fees.

127.    Defendant did have use of funds taken from the account of Plaintiff and from the accounts of members of the class as OD and/or NSF fees.

128.   Defendant had dominion and control of all funds taken from accounts as OD and NSF fees.

128.   Defendant wrongfully took OD and NSF fees from the accounts of Plaintiff and members of the class.

128.   Plaintiff and members of the class were harmed and are entitled to all of the remedies described in MCL 600.2912a.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff and the Class demand a jury trial on all claims so triable and judgment as follows:

A.   Certification for this matter to proceed as a class action;

B.   Restitution of all improperly assessed OD Fees paid to CCCU by Plaintiff and the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

C.   Actual damages in an amount according to proof;

D.   Treble Damages under MCL 600.2919a;

E.   Pre-judgment interest at the maximum rate permitted by applicable law;

F.   Costs and disbursements assessed by Plaintiff in connection with this action;

G.   Reasonable attorneys' fees pursuant to applicable law;  and

G.   Such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff, by counsel, demands trial by jury.

Dated: July 30, 2020                              Respectfully submitted,

/s/ Steven Goren
Steven E. Goren (SBN P36581)
32677 Redfern Street
Franklin MI 48025
(248) 408-0051
sgoren@gorenlaw.com

Jeffrey Kaliel*
Sophia Gold*
KALIEL PLLC
1875 Connecticut Ave. NW 10th Floor
Washington, D.C. 20009
(202) 320-4783
jkaliel@kalielpllc.com
sgold@kalielpllc.com

Taras Kick*
The Kick Law Firm, APC
815 Moraga Drive
Los Angeles, CA 90049
Phone: (310)395-2988
Fax: (310)395-2088

*to seek admission

Counsel for Plaintiff and the Proposed
Plaintiff Class